SMITH *v.* STATE.

(In Banc.   Oct. 26, 1942.

[10 So. (2d) 352.   No. 34931.]

Ford & Ford, of Pascagoula, for appellant.

Greek L. Rice, Attorney-General, by R. O. Arrington, Assistant Attorney-General, for appellee.

476

**Roberds, J.**, delivered the opinion of the court.

Smith was indicted for the murder of one Gus Johnson, convicted and sentenced to the state penitentiary for life, the jury disagreeing as to the punishment. Smith appeals. He assigns as errors (1) the refusal of the court to grant his request for a peremptory instruction for insufficiency of proof to show his guilt, (2) the granting of

a certain instruction to the state, and (3) the erroneous admission on behalf of the state of evidence of statements made by Smith's wife as hereinafter set out.

The first assignment is not well taken. The proof is ample to support his conviction.

The instruction is not properly worded, but, under the state of the proof herein, would not constitute reversible error. If it is requested and granted on a new trial, it may be in different form.

But the case must be reversed and remanded for the erroneous admission of testimony. Gus Johnson, under the pretense of taking Mary Smith, appellant's wife, from Smith's home to her sister's house, had carried her to his own. She had been at Johnson's house about a week when Smith there shot and killed Johnson. Smith had been to Johnson's three times seeking to get his wife to return home, which she had refused to do. Smith, on cross-examination, was asked: "On one occasion when you went there to get your wife to get her to come home, didn't she, in the presence of Mildred Walters, tell you that she was not going back, because you would not let her live at home, and she was going to get a divorce from you? A. No, sir." Counsel for Smith objected to this question and asked the court to exclude it and enter a mistrial because of the error, all of which the court overruled. After the defendant had rested his case, Mildred Walters, a woman twenty-two years of age, who was also staying at Johnson's house, was placed upon the stand by the state, and the district attorney asked her this question: "I will ask you this further question. Did Richard Smith's wife tell him on that occasion that she was not going home, because he would not let her stay, and she was going to get a divorce from him, and she was not going back? A. Yes, sir." Counsel for defendant objected to this and moved the court to exclude it because incompetent, irrelevant, and immaterial. The court overruled the objection, and the witness in

response to another question, repeated that Mary did make that statement. Counsel again objected and asked for a mistrial, which was overruled. It will be noted that this supposed conversation was not on the occasion of the shooting.

Not deciding the question of relevancy under the defense made herein, the testimony was certainly incompetent. The wife herself could not have thus testified over the objection of the husband. She was incompetent as a witness against him over his objection. Section 1528, Code 1930. If the wife could not have so testified personally and directly, she could not be made a witness nor the testimony made competent in this indirect and hearsay manner. Naturally, such testimony was very damaging to the defendant. Garner v. State, 76 Miss. 515, 25 So. 363; Pearson v. State, 97 Miss. 841, 53 So. 689; Davis v. State, 157 Miss. 669, 128 So. 885, 886.

The state contends the error was waived because Smith did not in his objection specifically point out in what respect the proof was incompetent, citing Jackson v. State, 163 Miss. 235, 140 So. 683, 684. In that case it was said: ''The only exception to this rule is that when, 'on the face of the evidence, in its relation to the rest of the case, there appears no purpose whatever for which it could have been admissible, then a general objection, though overruled, will be deemed to have been sufficient.' '' The evidence could not have been competent for any purpose if given by the wife, or any other person, ''in its relation to the rest of the case'' here made.

The state further says that Smith cannot take advantage of this because his own testimony shows that he is guilty, citing Graham v. State (Miss.), 179 So. 340, 341, and King v. State, 185 Miss. 433, 188 So. 554. Admitting, for the sake of the rule, that the evidence so proves, yet it is stated in the Graham case that the rule does not apply where the error is ''so grave as to deny the accused a fundamental right,'' and in the King case that, where

the conviction is adequately sustained by the testimony of the defendant himself, "any error in order to work a reversal must be one which obviously is obnoxious to the indispensable fundamentals of criminal procedure." This evidence, so introduced, is within both exceptions.

Reversed and remanded.

**Smith, C. J.**, delivered a dissenting opinion.

The judgment of the court below should be affirmed. This I think can best be made to appear by stating the case more fully than has been done in the opinion in chief. Smith and Johnson lived about two miles apart, and some days before the homicide Smith's wife, Mary, left his home, went to that of Johnson, and it was there that the homicide occurred. According to the state's evidence Mary left Smith's home in company with Mildred Walters, went with her to the home of Johnson, where Mildred rented a room, which she and Mary thereafter occupied. According to the appellant, Johnson came to his home in a taxicab, which Mary entered ostensibly for the purpose of being carried to her sister's, but instead was carried by Johnson to his home, where she thereafter remained. The only eye-witness to the homicide were the appellant, his wife and Mildred Walters. According to Mildred, who testified for the state, one night shortly after dark she, Johnson and Mary went in Johnson's kitchen when she heard a noise, and saw a man in Johnson's back-yard through an open door, and called Johnson's attention thereto, who immediately went on the back porch and asked, "Who is that?," to which the man in the yard replied, "Smith," and immediately shot Johnson, who was unarmed.

According to the appellant, he had gone to Johnson's several times and tried to induce his wife to return to his home, but she had declined to do so. On one of the occasions Johnson said to him: "Don't come to my

house any more or you might find something you are not looking for.'' His version of the homicide was that he again went to Johnson's to induce his wife to return to him, that he saw Johnson, Mary and Mildred in the kitchen and called his wife, saying, ''Hun,'' his accustomed name for her; and on being asked what then happened, answered, ''And she did not answer and he answered and at that time when he answered he rushed out and he said, 'Who in the hell is that and what do you want' and kept coming like that and the gun went off.'' . . . ''I don't know what he had in his hands. I knew he had killed two people here and I just was afraid of him.'' On cross-examination by the District Attorney, to the question, ''On one occasion when you went there to get your wife to get her to come home, didn't she, in the presence of Mildred Walters, tell you that she was not going back home, because you would not let her live at home, and she was going to get a divorce from you?'' He answered, ''No, sir.''

Mildred Walters testified for the state in rebuttal, and the following occurred on her direct examination:

''Q. I will ask you if you were present at Guss Johnson's house when the defendant here, Richard Smith, came there, and asked his wife to go home and heard what she said to him about going home? Yes, sir.

''Defendant objects, because incompetent, irrelevant and immaterial. Overruled.

''Q. I will ask you this further question. Did Richard Smith's wife tell him on that occasion that she was not going home, because he would not let her stay, and she was going to get a divorce from him, and she was not going back? Yes, sir.

''Defendant objects, and moves to exclude, because incompetent, irrelevant and immaterial, and seeks to contradict defendant on irrelevant and immaterial matter. Overruled.

''You say that she did tell him that? A. Yes, sir.

"Defendant objects, and motion to exclude, because same is incompetent, irrelevant and immaterial, and moves the Court to grant defendant a mistrial, on account of the prejudicial, incompetent, irrelevant and immaterial matter brought out by the District Attorney. Overruled. . . .

"Q. Go ahead? A. She told him if he would stop drinking and cursing and beating her she would go back, he could not make her go, and if he would quit she would come back.

"Defendant moves the Court to exclude answer of the witness, and instruct the jury to disregard it. Overruled."

The ground of this reversal is that Mildred Walters was erroneously permitted to testify in violation of section 1528, Code of 1930, to statements made by the appellant's wife to him in Mildred's presence, as to why she would not return to him. There are several reasons why the judgment should not be reversed for this. (1) (a) It does not appear that the appellant was harmed thereby; and (b) the verdict is manifestly correct. (2) The objection to the evidence did not point out the ground on which it is now based. (3) Section 1528, Code 1930, was not violated by the admission of the evidence.

1. Error in the admission of evidence is harmless unless it appears that the party complaining was harmed thereby. This rule has been announced and applied by this court and its two predecessors in a legion of cases, beginning in 1821 with Taylor v. Sorsby, Walker 97.

The rule, while not limited to, is particularly applicable in, cases both civil and criminal, where the verdict is manifestly correct, as will appear from a continuous line of decisions of this court, beginning at least as far back as 1843 with Cartwright v. Carpenter, 7 How. 328, 40 Am. Dec. 66. In criminal cases a verdict of guilty has been uniformly held by this court, as the fact is, to be manifestly correct when the defendant appears, as here,

to be guilty on his own testimony; e. g. Sloan v. State, 158 Miss. 138, 130 So. 110; King v. State, 185 Miss. 433, 188 So. 554. The only character of error that is not harmless in such a case is ''one which obviously is obnoxious to the indispensable fundamentals of criminal procedure,'' Sloan v. State, supra, and such is not the character of the alleged error here. The indispensable fundamentals of criminal procedure are such as are essential to the court's jurisdiction, or to the defense of the accused; e. g. a valid indictment, a verdict by a jury, the right of the accused to be heard in person or by counsel, and the like—such as the legislature cannot constitutionally dispense with. The wife's competency to testify against her husband has no constitutional basis, but is purely statutory, and can be removed, and has heretofore been restricted, by the legislature.

2. The admission of this evidence of Mildred Walters is said to be erroneous for the reason only that its admission indirectly violates section 1528 of the Code of 1930, which prohibits a husband or wife from testifying against the other, in that it contains a statement made by the appellant's wife, to which she herself was incompetent to testify, and as to which Mildred was in the same legal category as the appellant's wife would have been had she been offered as a witness against him. In other words, the error said to have been committed relates, not to the competency of evidence, but to the competency of a witness, the appellant's wife, who was permitted to testify indirectly through Mildred Walters. No such question was raised in the court below.

Two objections were made to the testimony; the first was simply because ''incompetent, irrelevant and immaterial,'' and the second ''because incompetent, irrelevant and immaterial, and seeks to contradict defendant on irrelevant and immaterial matter.''

These objections are to the competency of the evidence, which the appellant's wife is now said to have given

through Mildred Walters, and not to her competency as a witness, or of Mildred Walters, who represented her. An objection to the competency of testimony does not raise the question of the competency of the witness. 70 C. J. 185. Such an objection must be specific, and point out the ground therefor. 1 Wigmore on Evidence, 3rd Ed., sections 18 and 586; 5 Jones Ev., 2nd Ed., p. 3905; 70 C. J., supra. This rule is particularly applicable here, for the incompetent witness, the appellant's wife, was not before the court, and there is nothing in the record to indicate that the attention of the court or counsel was addressed to the now claimed indirect method of getting her testimony to the jury. Moreover, a specific reason was given for the objection, which was not that now claimed, but was that it "seeks to contradict defendant on irrelevant and immaterial matter," and by all the authorities, the objection in this court must be confined thereto, as will appear from Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335.

3. Section 1528, Code of 1930, was not violated by the admission of this testimony. If the appellant's wife had several times previously refused to return to him, that fact, coupled with the further fact that when he killed Johnson he was snooping around at night in Johnson's back-yard, would tend to negative the appellant's claim that he went to Johnson's to get his wife, and would indicate that his purpose was to do just what he did—to kill Johnson. The previous refusal of his wife to return to the appellant, was, therefore, a relevant evidential fact, and if that refusal appeared in a controversy between the appellant and his wife, heard and witnessed by others, anyone who heard and saw it was competent to testify thereto. The cases cited to the contrary are not in point. In the Garner and Pearson cases the evidence held incompetent were statements made by the wife to the witness against, and out of the presence of, her husband; the Davis case is in the same category, except that the

statements were made by a husband against his wife. In all of them the evidence was not only hearsay, but the statements made by the husband or wife out of the presence of the other had no probative value, and the fact that they were made would have been inadmissible, without reference to by whom they were made, or by what witness they were sought to be proven.

Moreover, this appellant himself, when testifying, said that his wife had refused to return to him, giving him as the reason therefor that, "if I go home I can't stay there." He thus had testified to a part of what his wife said to him when refusing to return to him, and Mildred Walters' testimony simply gave another part thereof omitted, according to her version of the matter, by the appellant.