497 So.2d 70 (1986)
Hazel FANNING
v.
STATE of Mississippi.
No. 55825.
Supreme Court of Mississippi.
September 17, 1986.
Rehearing Denied November 19, 1986.
*71 Leon Mangum, Decatur, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This criminal appeal is from the Circuit Court of Newton County wherein Hazel Fanning (appellant) was convicted of violating Miss. Code Ann. § 97-13-19 (1972) by feloniously reporting a false account of votes in the 1983 Democratic Primary Election of Newton County. Feeling aggrieved, the appellant assigns the following as error on appeal:
(1) The circuit court erred in overruling appellant's demurrer to the indictment for the reason that § 97-13-19 (1972), does not apply to political party primary elections.
(2) The circuit court erred in overruling appellant's motion to require the state to proceed as a misdemeanor, and in refusing jury instruction NO. D-15 offered by the appellant, for the reason that the acts alleged in the indictment, if proven, constitute a misdemeanor and a violation of § 23-5-161 (1972), and not a violation of § 97-13-19 (1972).
(3) The circuit court erred in allowing, over objection of appellant, the statement of appellant's husband, to be introduced against her.
(4) The sentence of the court was excessive, and the court exceeded its authority to require appellant to pay the cost of the special election necessitated by the vote.
(5) The verdict of the jury was contrary to the overwhelming weight of the credible evidence.

I.
Mrs. Hazel Fanning, a 72 year old retired school teacher from Hickory, Mississippi served as an election officer of the Hickory precinct "A-F" voting box in the Democratic Primary runoff election held on August 23, 1983. After the polls had closed, Ms. Fanning and several other officials at the A-F voting box began counting and tallying the votes. Ms. Fanning was the only person to call out the names at the A-F box. As she called out the names, two other workers made appropriate entries on the tally sheets distributed as part of the election kit. During tabulation of these votes, several poll workers offered to help Ms. Fanning, but she declined the assistance. The tally sheets turned into the Newton County Circuit Clerk Office in the race for District 5 Supervisor revealed that Robert Stamper received 235 votes and W.E. Edwards, the incumbent, received 16 votes in the Hickory A-F voting box.
In recounts conducted by the Democratic Executive Committee following the election, Edwards received 134 votes while Stamper received 118 votes. The recount resulted in 804 to 804 tie.
In March, 1984 Ms. Fanning was indicted, found guilty, and sentenced to serve one year in the state penitentiary. However, the one year was suspended, and she was placed on probation for two years, conditioned upon her serving thirty days in the county jail, performing sixty days of community service, paying the court costs of $651.40 and paying the costs of the special election of $3,144.41.

II.
Did the circuit court err in overruling appellant's demurrer to the indictment for the reason that § 97-13-19, Miss.Code of 1972, Ann., does not apply to Democratic Primary runoffs?
Appellant was indicted in March of 1984 upon the following charge:
... While acting within her official capacity as election officer of the Hickory "A-F" voting box in the August 23, 1983 Democratic Primary Election of Newton County, Mississippi did willfully, unlawfully, feloniously, and designedly report a false account of votes received by W.E. Edwards and a false account of votes received by Robert Stamper in the District No. 5 supervisor's race in said primary *72 election, to the tally keepers of said Hickory "A-F voting box, against the peace and dignity of the State of Mississippi.
Prior to trial, defense counsel demurred to this indictment based upon Miss. Code Ann. § 97-13-19 (1972) which provides as follows:
If any manager, clerk or any other officer whatever, assisting or engaged in conducting any election, or charged with any duty in reference to any election, shall designedly omit to do any official act required by law, or designedly do any illegal act in relation to any general or special election, by which act or omission of votes taken at any such election in any district shall be lost, or the electors thereof shall be deprived of their suffrage at such election, or shall designedly do any act which shall render such election void, or shall be guilty of any corrupt conduct or partiality in his official capacity at such election, he shall, upon conviction, be imprisoned in the penitentiary for a term not exceeding two years. (Emphasis added)
Appellant argues that the above section only applies to a general or special election, but not to a political party's primary election to select its nominee.
The code sections dealing with election crimes in Miss. Code Ann. § 97-13-1 et seq. concern violations affecting "any election," "all elections," "general and special elections," and "primary elections." This Court therefore concludes that the defined crimes of this title generally concern themselves with the election processes of the state as well as a political party.
The specific statute involved here, Miss. Code Ann. § 97-13-19 (1972), first uses the language "any election" twice, although also using the terms "general and special elections." It applies to "all elections," but further emphasizes those general and special elections in addition. However, the legislative intent apparent in a reading of the entire statute here involved leads to the conclusion that the words "all elections" intend to encompass primary elections as well as general and special elections.
In Mississippi State Board of Election Commissioners v. Meredith 301 So.2d 571 (Miss. 1974), this Court stated that the selection of candidates by party primaries is an integral part of the entire election process. Logically it follows that a primary election should be subject to statutory regulation as any other election in the election process. Although the Meredith case does not involve a criminal violation, the rationale of that case is applicable here.
"It is a general rule that in construing statutes this Court will not only interpret the words used, but will consider the purpose and policy which the Legislature had in view in enacting the law. The Court will then give effect to the intent of the Legislature." Aikerson v. State, 274 So.2d 124, 127 (Miss. 1973); State Highway Commission v. Coahoma County, 203 Miss. 629, 32 So.2d 555, 37 So.2d 287 (1947).
This Court concludes that § 97-13-19 applies to all elections, both primary, general, and special elections. The trial judge was correct in overruling the demurrer on this point.

III.
Did the circuit court err in overruling appellant's motion to require the State to proceed on a misdemeanor, and in refusing jury instruction No. D-15 offered by the appellant?
Appellant asserts that the acts alleged in the indictment, if proven, constitute a misdemeanor and a violation of § 23-5-161, Miss.Code of 1972, Ann., and not a violation of § 97-13-19, Miss.Code of 1972, Ann. However, section 97-13-19 previously quoted from the Election Crimes Title, makes any illegal act of an election worker at any election a felony and subject to two years imprisonment. Additionally, the Corrupt Practices Act, pertaining to primary elections, contains § 23-5-161 which provides as follows:
Any election commissioner, or any other officer or person acting as such, or *73 performing election duty, who shall willfully refuse or knowingly fail to perform any duty required of him by the election laws, or who shall violate any of the provisions thereof, shall be guilty of a misdemeanor, and upon conviction, be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or be imprisoned in the county jail not less than ten (10) days nor more than ninety (90) days, or both.
Appellant argues that when facts constituting a crime fall within either of two or more laws, or there is substantial doubt as to which applies, the statute imposing the lesser punishment shall be applied. Grillis v. State, 196 Miss. 576, 17 So.2d 525 (1944); Bourdeaux v. State, 412 So.2d 241 (Miss. 1982).
However, Cumbest v. State, 456 So.2d 209 (Miss. 1984) resolved of the so-called Grillis dilemma wherein this Court stated:
Even if the criminal statutes cover the same criminal act in virtually the same language, however, and one provides for a greater penalty than the other, the State, as we held in Brooks v. State, 236 So.2d 751 (Miss. 1970), and Lee v. State, 201 Miss. 423, 29 So.2d 211 (1947), may proceed under either. Nothing stated in McCrory or Bence should be construed as limiting the State's authority to proceed under either section so long as the indictment is clear and unequivocal.
The trial judge held the acts charged in the indictment fall within the felony statute, being corrupt conduct. Miss. Code Ann. § 23-5-161 is targeted largely at sins of omission, as opposed to sins of commission. Looking to the particular indictment and the Cumbest holding, this Court holds that the trial judge did not err in declining to require the State to proceed with the cause as a misdemeanor.
Appellant further contends that the trial court erred when it refused to grant instruction D-15, as to the form of the verdict. The trial judge properly held that the instruction was potentially misleading and confusing. However, the court granted a proper instruction as to the form of the verdict. Therefore, this Court affirms the trial court's action on refusal of a confusing instruction as to the form of the verdict.

IV.
Did the circuit court err in allowing a witness to testify of the statement of appellant's husband made in the defendant's presence?
During direct examination of Betty Dear, she testified that at the time the count was concluded, Mr. Fanning made a statement to Ms. Dear that "He [Mr. Edwards] just got 16 votes." Ms. Dear further stated that after Mr. Fanning repeated the small vote of Edwards several times, Hazel Fanning said, "Hush, J.B."
Appellant asserts that the State indirectly introduced the statement of J.B. Fanning against Ms. Fanning in violation of Miss. Code Ann. § 13-1-5 (1972). That statute provides in part that: "... in all ... instances where either of them (husband or wife) is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instance without the consent of both."
The trial judge made the following ruling on appellant's objection:
I don't consider that as allowing the husband to testify against a wife in violation of the law that we have in this state that a husband or wife cannot testify against another when that opposite spouse is being tried for a crime. The statement as made by Mr. Fanning was not an incriminating statement, the comment he made. The problem that I have is whether or not the response of Ms. Fanning is admissible, and what benefit it may be. As I understand it here, Ms. Fanning responded after a statement was made by Mr. Fanning that he [Edwards] had only received 16 votes, and she said "hush, J.B." I believe that was your testimony, wasn't it?
By the witness: Right.
*74 The lower court judge overruled the objection and let the jury place whatever benefit they wished upon that statement. The Court holds that all cases cited by appellant: Smith v. State, 193 Miss. 474, 10 So.2d 352 (1942), Ford v. State, 218 So.2d 731 (Miss. 1969), Caldwell v. State, 194 So.2d 878 (Miss. 1967) involved situations where a third party was permitted to testify to incriminating hearsay statements made by one spouse outside the presence of the other spouse.
The privilege protected by Miss. Code Ann. § 13-1-5 extends only to communications which are intended to be confidential. Thus, the presence of another person, even a family member, is deemed to mean that the communication was not intended to be confidential. Comment, Proposed Rules of Evidence, 467 So.2d (1985). Rule 504(b). Dycus v. State, 440 So.2d 246 (Miss. 1983). See also Mississippi Rules of Evidence, Rule 803(1). The Court holds that no reversible error was committed in the handling of this objection.

V.
Was the sentence of the court excessive and beyond the court's authority to require repayment of the cost of the special election?
The lower court imposed the following sentence:
Section 97-13-19 is the code section for which you were convicted. It provides that upon conviction, that person be imprisoned in the penitentiary for a term not exceeding two years. It does not provide for the payment of a fine. It leaves discretion with the trial judge only as to confinement. Ms. Hazel Fanning, it is the sentence of this court that you serve one year in the Mississippi State Penitentiary, but upon serving thirty (30) days in the Newton County Jail, and upon doing sixty (60) days community work, and upon repaying to Newton County the sum of $3,144.41, the cost of the special election of supervisor district No. 5, and upon payment of $651.40, being the costs of the trial of this case, the one year is suspended and you are placed on probation for a period of two years.
The appellant contests that portion of the sentence which requires that she repay to Newton County the sum of $3,144.41 as being beyond the court's authority. Miss. Code Ann. § 99-37-3, (Supp. 1984) provides: when a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.
And in § 99-37-5(2) it states:
When a defendant sentenced to pay a fine or costs or ordered to make restitution is also placed on probation or imposition or execution of sentence is suspended, the court may make payment of the fine or costs of the making of restitution a condition of probation or suspension of sentence. Such offender shall make restitution payments directly to the victim.
Miss. Code Ann. § 47-7-33 specifically grants to the trial court the power to suspend a sentence and place the defendant on probation while § 47-7-35 authorizes the lower court to "... determine the terms and conditions of probation ..."

VI.
Was the verdict of the jury contrary to the overwhelming weight of the credible evidence?
Appellant argues that there is no evidence in the record to indicate that the acts of Ms. Fanning were anything other than a mistake of an elderly person who had been at the polling place for some fourteen to fifteen hours in a tiresome, tedious process of calling out names from ballots for 15 races when 252 persons had voted and cast a ballot. Appellant argues that the testimony of the State falls wilfully short of the necessary proof to show that appellant designedly reported a false account of votes with any willfulness or intention to alter the proper outcome of the election. However, Ms. Fanning called out all the votes in the tallying process and refused assistance.
*75 Once the jury has returned a verdict of guilty in a criminal case, the Supreme Court is not at liberty to direct the defendant be discharged, short of the conclusion on its part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that defendant was guilty. May v. State, 460 So.2d 778 (Miss. 1984). This evidence does not reach this point.
In overruling the defendant's motion for a directed verdict made at the close of the State's case in chief, the trial court succinctly summarized the State's evidence as follows:
In this case, the evidence establishes that on the August 23rd election of the Democratic Primary, that candidate Edwards received 16 votes in the Hickory A-F box while the candidate, Stamper, received 235 votes; that upon a recount of the votes, Candidate Edwards received 134 votes, while Stamper received 118 votes. The evidence is that Ms. Fanning called all of the votes out, and the evidence of the clerks of the A-F precinct was that they actually recorded the votes as they were called out by Ms. Fanning. In my opinion thus far the State has made out a prima facie case, and a motion for a directed verdict is overruled.
The Court concludes that the evidence against Ms. Fanning is sufficient to sustain the jury's verdict.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.