¶ 1. This appeal follows the conviction of Steven Roland on the charges of murder, arson, and possession of a firearm by a felon. Roland, a habitual offender, was sentenced to three consecutive life sentences. Aggrieved, Roland asserts the following issues on appeal:
I. WHETHER THE TRIAL COURT ERRED IN NOT APPOINTING AN INVESTIGATIVE EXPERT (PRIVATE INVESTIGATOR) TO ASSIST THE DEFENDANT IN GATHERING EVIDENCE TO USE IN HIS DEFENSE.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE DEFENDANT'S EX-WIFE TO TESTIFY AS TO WHAT SHE SAW THE DEFENDANT DO AND WHAT HE SAID TO HER DURING THE TIME OF THEIR MARRIAGE.
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE ADMISSION OF A TAPED TELEPHONE CONVERSATION BETWEEN *Page 264 
THE DEFENDANT AND HIS THEN WIFE.
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE ADMISSION OF GRUESOME PHOTOGRAPHS OF THE VICTIM AND CRIME SCENE.
V. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT.
Finding no error, we affirm.
 FACTS ¶ 2. In the early morning hours of December 5, 2001, Roland and his wife Anita left their home in Selmer, Tennessee and traveled to Corinth where they visited Jimmy Dixon. Anita dated Dixon before she married Roland. Roland, jealous and suspicious because Dixon had asked Anita's mother about his wife, confronted Dixon. The meeting turned physical when Roland shoved Dixon, hit him in the head with a Ruger .22 pistol, and knocked him to the floor. Anita convinced her husband to let Dixon up. When Dixon's phone rang, Dixon attempted to flee his home. However, Roland, using the same .22 caliber pistol, killed Dixon when he fired two shots into Dixon's back. Roland threatened to kill Anita if she did not follow his instructions.
 ¶ 3. Having killed Dixon, Roland concentrated on concealing the homicide. Roland left Dixon where he lay and set Dixon's house on fire, but not before taking some items from the house.[1]
Satisfied, Roland focused on disposing of the murder weapon. Using a grinder, he filed the serial numbers off the pistol. Not content, he drove to the Savannah Bridge and rid himself of the murder weapon when he threw the barrel and clip into the Tennessee River. However, one key link to the crime still existed. Although Roland threatened to kill her if she revealed what he had done, Anita implicated Roland in the homicide. Through Anita's information, the Alcorn County Sheriff's Office arrested Roland. Other facts will be discussed as necessary.
 ¶ 4. Roland was formally charged in an indictment returned by the Alcorn County Grand Jury. He proceeded to trial on February 3, 2003. The jury found Roland guilty of murder, arson and possession of a firearm by a felon. The circuit court sentenced Roland, a habitual offender, to three life sentences without the possibility of parole. Finding no error, we affirm the circuit court's decision.
 ANALYSIS
I. DID THE TRIAL COURT ERR IN NOT APPOINTING AN INVESTIGATIVE EXPERT (PRIVATE INVESTIGATOR) TO ASSIST THE DEFENDANT IN GATHERING EVIDENCE TO USE IN HIS DEFENSE?
 ¶ 5. Roland, by pretrial motion, requested funds to hire an investigator to help his court-appointed attorney prepare a defense. The circuit court denied Roland's request, yet went on to say that Roland could request investigative help at a later date, should a specific need arise. Roland never made a subsequent request. On appeal, Roland contends that the circuit court committed reversible error when it denied his motion for funds to hire an investigator. Finding no abuse of discretion, this Court finds this issue meritless.
 ¶ 6. A defendant is not entitled to an investigator without showing a substantial *Page 265 
need or concrete reasons why an investigator is necessary.Manning v. State, 735 So.2d 323 (¶ 51) (Miss. 1999). It is insufficient to allege undeveloped assertions that the requested assistance would be beneficial. Caldwell v. Mississippi,472 U.S. 320, 323, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Hansen v.State, 592 So.2d 114, 125 (Miss. 1991). Roland's motion did not indicate a substantial need or a concrete reason why he needed an investigator. He merely claimed that there were numerous witnesses in Tennessee who may be able to help his case. "Numerous" is a vague quantity. Likewise, he claimed that those witnesses may have helped his case. May naturally implies that those witnesses may not have helped Roland's case. Concerning the helpful quality that these potential witnesses may or may not have provided, how could they have helped? Would they have supplied an alibi or testified to some affirmative defense? We do not know, and neither did the circuit judge. We may only reverse the circuit court's decision on an indigent defendant's motion for funding to obtain an investigator if the circuit court's decision was an abuse of discretion. Grayson v. State,806 So.2d 241 (¶ 36) (Miss. 2001) (citing Hansen, 592 So.2d at 125). In light of these unanswered questions, brought about by sparse information, this Court can not determine that the circuit court abused its discretion in denying Roland's motion for funds for an investigator.
II. DID THE TRIAL COURT ERR IN ALLOWING THE DEFENDANT'S EX-WIFE TO TESTIFY AS TO WHAT SHE SAW THE DEFENDANT DO AND WHAT HE SAID TO HER DURING THE TIME OF THEIR MARRIAGE?
 ¶ 7. Roland filed a pretrial motion, through which he sought to prevent Anita's testimony. Although they were divorced at the time,[2] Roland claimed that Anita's testimony was inadmissible because it was precluded according to marital confidentiality and that admission of her testimony would violate the spousal privilege. The circuit court denied Roland's motion and allowed Anita to testify. On appeal, Roland contends that in allowing Anita's testimony, the circuit court committed reversible error.
 ¶ 8. The relevance and admission or exclusion of evidence is a matter of the trial court's discretion which will be reversed only for an abuse of that discretion which results in prejudice to a party. Shearer v. State, 423 So.2d 824, 827 (Miss. 1982). Finding Roland's contentions without merit, we affirm the decision of the circuit court.
 ¶ 9. The spousal privilege, codified within Mississippi Rule of Evidence 504, states that a person has a privilege to prevent his spouse, or former spouse, from testifying as to any confidential communication between himself and his spouse. M.R.E. 504(b). Rule 504 is exclusively limited to communications which are intended to be confidential. Fanning v. State, 497 So.2d 70, 74 (Miss. 1986). A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person. M.R.E. 504(a). The presence of another person is deemed to mean that the communication was not intended to be confidential. Fanning, 497 So.2d at 74. Roland asks this Court to extend the privilege to Anita's testimony regarding Roland's conduct during their marriage as well as any confidential communications. *Page 266 
 ¶ 10. Roland has not cited any authority to persuade this Court to bring Roland's conduct under the protection of the marital privilege umbrella. Anita testified as to what Roland said and did in Dixon's presence. Thus, until Roland killed Dixon, Roland did not speak or act in confidence with his wife. Moreover, the marital privilege only protects communications. M.R.E. 504(b). Roland's altercation with Dixon was not a communication, nor was it confidential. When Roland killed Dixon, his act was not a communication. Setting Dixon's home on fire was not a communication. Attempting to conceal the evidence was not a communication. Because Anita could testify to all these facts, any prejudice to Roland in admitting any confidential communication is harmless in light of the evidence that the privilege does not protect.
III. DID THE TRIAL COURT ERR IN ALLOWING THE ADMISSION OF A TAPED TELEPHONE CONVERSATION BETWEEN THE DEFENDANT AND HIS THEN WIFE?
 ¶ 11. By pretrial motion, Roland sought to exclude a telephone conversation between Anita and himself. The subject phone call involves a call from Roland placed to Anita. The circuit court denied his motion. On appeal Roland argues that the trial court's refusal to exclude the recorded conversation he had with Anita constituted reversible error. He reasons that the recorded telephone conversation should have been excluded as a violation of the spousal privilege. Given the case law and other relevant citations above, the recorded phone conversation was admissible.
 ¶ 12. The spousal privilege, discussed above, does not exclude the conversation from evidence. Roland placed the call from the county jail. A warning is posted near the telephone. That warning alerts callers that calls may be monitored or recorded. Thus, there was no reasonable expectation of confidentiality. What is more, Roland threatened to kill Anita if she talked to authorities. Because Anita was afraid of Roland, she did not want Roland to call her or her family so she contacted the sheriff's office and asked that Roland be prohibited from making calls. Because of Anita's allegations of threats, an officer set up Anita's phone to allow Anita to record Roland's incoming calls. Anita recorded the phone call, not law enforcement. Roland's subjective belief that he was not talking to anyone else during the conversation is irrelevant.
IV. DID THE TRIAL COURT ERR IN ALLOWING THE ADMISSION OF GRUESOME PHOTOGRAPHS OF THE VICTIM AND CRIME SCENE?
 ¶ 13. Roland attempted to exclude photographs of Dixon's remains. He argued that the photographs served no purpose other than to inflame the jury. The circuit court permitted the photographs of Dixon's body into evidence. Roland appeals the circuit court's decision and argues that the court committed reversible error by so holding. We disagree.
 ¶ 14. "The admissibility of photographs generally lies within the sound discretion of the trial court; and, absent an abuse of discretion, the court's decision will be upheld on appeal."Jackson v. State, 784 So.2d 180 (¶ 9) (Miss. 2001). The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value. Williams v. State,544 So.2d 782, 785 (Miss. 1987). Photographs of the victim have evidentiary value when they aid in describing the circumstances of the killing, *Page 267 
the location of the body, the cause of death, or clarify or supplement a witness's testimony. Gray v. State, 728 So.2d 36
(¶ 92) (Miss. 1998).
 ¶ 15. Reference to the above case law clearly indicates that admission of the photographs of the victim, regardless of their gruesome nature, was proper. The photographs were relevant and probative. The photographs revealed the position and location of Dixon's body. It was important that the jury understand the position of Dixon's body in the burned house. Additionally, the photographs corroborated Anita's testimony and Dr. Stephen Hayne's autopsy report. In light of the broad standard of admissibility permitted under this issue, we find that the trial court did not err in allowing the photographs into evidence. There is no merit to this assignment of error.
V. DID THE TRIAL COURT ERR IN NOT GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT?
 ¶ 16. Roland requested a directed verdict after the State presented its case-in-chief. The circuit court denied that request. Roland proceeded and testified in his defense but was ultimately convicted. Having unsuccessfully requested a judgment notwithstanding the verdict or a new trial, Roland appeals. However, we find his contention without merit.
 ¶ 17. We must consider all of the evidence in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). If there is substantial evidence in the record of such quality and weight that a reasonable fair-minded juror might reach different conclusions regarding the guilt of the defendant, we have no authority to disturb the jury's verdict. Id.
 ¶ 18. There was sufficient, credible evidence in support of the trial court's denial of Roland's motion for judgment notwithstanding the verdict. Anita testified that Roland killed Dixon and set Dixon's house on fire. Anita also testified that Roland took certain items from Dixon's home. Lindsay Dixon corroborated Anita's testimony and identified the articles that Roland took from Dixon's home as belonging to her father. Sheila Strickland corroborated Anita's testimony when she testified that she saw Roland's truck near Dixon's home on the day of the murder. She also identified Roland as the man she saw. Russ Alexander testified that diver Ricky Bradford recovered the pistol pieces from the Tennessee River, right where Anita said they would be. Dr. Hayne performed Dixon's autopsy. His findings corroborated Anita's version of the crime. Specifically, that Dixon died before his house burned and that the cause of Dixon's death was two gunshot wounds to his back. Accordingly, the jury had ample evidence to convict Roland.
 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OFCONVICTION OF COUNT I, MURDER; COUNT II, ARSON OF A DWELLING; ANDCOUNT III, FELON IN POSSESSION OF A FIREARM AND SENTENCE OF LIFEON EACH COUNT TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE OR EARNEDTIME RELEASE, AND PAY $90,000 IN RESTITUTION IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.
[1] Roland took an SKS assault rifle stock, a rifle barrel, an ammunition clip, and a Christmas ornament.
[2] Anita received a divorce from Roland on July 19, 2002. *Page 268